Matthias, J.
 

 Section 10510-46, General Code, in its
 
 *489
 
 form as enacted January 1, 1932, and as in force at the time of the execution of the mortgage involved in this case in the respects essential to be now considered, read as follows:
 

 “The money arising from the sale of real estate shall be applied as follows':
 

 “(1) To discharge the costs and expenses of sale, including reasonable fees for services performed by attorneys for the fiduciary in connection with the sale, and the commission of the executor or administrator thereon for his administration, or compensation of the guardian for his services as fixed by the court.
 

 “ (2) To the payment of mortgages, judgments, and tax liens against the ward or deceased person * * *.”
 

 In that form it came before this court for interpretation and application in the case of
 
 State, ex rel. Fulton,
 
 v.
 
 Griffith, Admr.,
 
 127 Ohio St., 161, 187 N. E., 121. The conclusion then reached and announced by this court as to the meaning, intent and application of the statute made unnecessary the consideration or decision of any question of its constitutional validity. As construed by the court, the statute was conceded to be valid. The syllabus in that case is as follows:
 

 “1. Under the provisions of Section 10510-46, General Code, the commission for the service of an executor or administrator in the sale of real estate and attorney fees for services performed for such fiduciary therein, inay be computed only upon and paid out of ‘the money arising from the sale of such real estate. ’
 

 “2. Where a mortgagee purchases the property for less than the sum found due on his mortgage, the probate court is not authorized to tax, as’ a part of the costs of sale, either a commission for the fiduciary or a fee for his attorney.
 
 (Stone
 
 v.
 
 Strong,
 
 42 Ohio St., 53, approved and followed.)”
 

 Subsequent to the announcement of the decision in that case, the statute in question was amended and en
 
 *490
 
 acted in its present form and became effective September 2, 1935. As thus enacted, it provides as follows :
 

 “Tbe sale price of real estate sold shall be applied and distributed as follows:
 

 “(1) To discharge tbe costs and expenses of tbe sale, including reasonable fees' to be fixed by tbe court for services performed by attorneys for tbe fiduciary in connection with tbe sale, and such compensation, if any, to tbe fiduciary for bis services in connection with tbe sale as tbe court may deem warranted and fix, which costs, expenses, fees and compensation shall be paid prior to any liens upon tbe real estate sold and notwithstanding tbe purchase of such real estate by a lien bolder.
 

 “ (2) To tbe payment of taxes, penalties, and assessments' then due, against such real estate and to tbe payment of mortgages and judgments agains tbe ward or deceased person * *
 

 It is to be observed that as amended, instead of providing that “tbe money arising from tbe sale of real estate,” etc., it now provides that “tbe sale price of tbe real estate sold shall be applied and distributed as follows.” Then, after directing tbe fixing and allowance of fees by tbe court, tbe statute provides for tbe payment thereof “prior to any liens upon tbe real estate sold and notwithstanding' tbe purchase of such real estate by a lien bolder.” There seems, therefore, to be little room for question as to tbe. purpose and intent of tbe statute as amended, which was that tbe administrator’s compensation and tbe fee of bis attorney for services rendered in tbe sale of real estate should be fixed and determined by tbe Probate Court and taxed as a part of tbe costs in tbe proceeding and paid prior to any liens upon tbe real estate, even though a lien bolder was tbe purchaser thereof and at a price less than bis lien thereon.
 

 It is contended that? as thus’ interpreted and en
 
 *491
 
 forced, the provisions of Section 10510-46, General Code, under and by virtue of which the order of the court now challenged was made, is violative of the constitutional rights of the appellant for the reason that it constitutes the taking of property without due process of law, results in a denial of the equal protection of the law, and impairs the obligation of the mortgagee’s contract entered into prior to the amendment of the statute in the respect in question. It is difficult to follow the contention made that this statute results in either the denial of due process or in the unequal protection of the law. The proceeding instituted by the administrator in the Probate Court to sell the real estate in question was pursuant to and in strict accord with the provisions of the statute, and the sale was ordered and consummated as therein authorized and directed. The validity of that proceeding is not questioned. The mortgagee, by answer and cross-petition, set up its mortgage claim against the premises, asserting that the same had long been in default and prayed foreclosure thereof, and that the real estate described be ordered sold “or sold by the plaintiff.”
 

 The fees of an administrator and his attorney to be allowed and paid as a part of the costs are only such as the court finds to be reasonable, and are limited to the services performed in connection with the sale of the premises. The technical theory that the condition of the mortgage having been breached, the title of the mortgagee became absolute, in our opinion has' no application in the consideration and determination of the constitutional validity of the statute.
 

 The subject of costs is one entirely of statutory allowance and control. As said by Hitchcock, J., in
 
 Farrier
 
 v.
 
 Cairns, Exrx.,
 
 5 Ohio, 45, 48, “Costs are unknown to the common law. They are given only by statute, and may be changed, or entirely taken away, at the will of the Legislature.” The principal object of attack of counsel for the mortgagee is the provision
 
 *492
 
 respecting the allowance and payment of attorney fees'. Cases wherein statutes allowing attorney fees to plaintiffs in actions for wages and other actions of like character have been cited in support of that contention. The statutory provision specifying a fee and making its allowance and payment mandatory where a claim for wages was sued upon and recovered was held unconstitutional in the case of
 
 Hocking Valley Coal Co.
 
 v.
 
 Rosser,
 
 53 Ohio St., 12, 41 N. E., 263, 53 Am. St. Rep., 622, 29 L. R. A., 386, upon the ground that it .was in the nature of a penalty against a certain class of debtors and, by reason of its restriction to a particular class of citizens, denied them the equal protection of the law. Another cas'e relied upon by the mortgagee is that of
 
 Miller et al., Exrs.,
 
 v.
 
 Kyle,
 
 85 Ohio St., 186, 97 N. E., 372, where the court held in approval of former decisions that a provision in a promissory note for the payment of attorney fees if the principal and interest were not paid at maturity was against public policy and void, this being based upon the ground that the. enforcement of such contracts would result in evasions of the usury laws and the obvious tendency of such contracts to encourage suit. The Supreme Court of the United States unanimously held, in
 
 Missouri, K. & T. Ry. Co.
 
 v.
 
 Cade,
 
 233 U. S., 642, 58 L. Ed., 1135, 34 S. Ct., 678, that a statute authorizing allowance of reasonable attorney fees in certain specified cases as' a part of the costs is not repugnant to either the “equal protection” or “due process” clauses of the Fourteenth Amendment of the federal Constitution. No cases have been cited which deal with facts such as here presented or bear directly upon the principle involved in this case.
 

 In the provision made in the statute under consideration, it cannot be claimed that it is in the nature of a penalty or that it is class legislation discriminating against some and favoring others; for this provision, clearly within the sphere of its operation, affects alike
 
 *493
 
 all persons similarly situated. The purpose and effect of this statute is not to exact the payment of a fee for services rendered by the attorney of an antagonist in a legal controversy; it is and could be allowed only for the purpose of providing compensation for services rendered in the proceeding for the sale of the real estate in the manner provided for and required by the statute and resulting beneficially to the mortgagee. In this' respect, it is not unlike provisions for the allowance and payment of counsel fees in proceedings in partition. The fear expressed by counsel that expense might be thus incurred in the way of fees for an administrator or his attorney by reason of controversy between heirs or devisees is, of course, entirely unfounded ; for no one would contend that any allowance could be made whatever for service rendered in such behalf. It is only for services performed in connection with the sale that any allowance whatever is authorized.
 

 In our opinion, the amendment of the statute in the respect set forth subsequent to the execution of the mortgage in question does not result in the impairment of the obligation of the contract. This is a remedial provision and the statute in force at the time of the rendition of the judgment is controlling. The principle applicable is' stated as follows in 8 Ohio Jurisprudence, 597, Section 463: “The rule that the obligation of contracts may not be impaired by acting on the remedy does not preclude within certain limits the alteration or modification of remedies. It merely means that the alteration cannot go to the extent of impairing the obligation of contracts. Consequently, legislation which merely affects the remedy, which is always subject to the legislative will, but does not impair the obligation of contracts, is valid.”
 

 This court held, in the first paragraph of the syllabus in
 
 Smith
 
 v.
 
 New York Central Rd. Co.,
 
 122 Ohio St., 45, 170 N. E., 637, that “a statute which relates
 
 *494
 
 exclusively to remedial rights is not within the purview of the constitutional inhibition against the legislative enactment of retroactive laws.”
 

 It should be particularly observed that, though the amended statute was filed with the Secretary of State June 3, 1935, it did not become effective until September 2, 1935. Payments upon the obligation of the mortgagor had long been in default. This action was not instituted until November 2, 1935. The complaining mortgagee had within its power the right to institute action in foreclosure, and incidentally to assume the burden and expenses thereof, during the several months that intervened between the enactment of the law here in question and the institution of this action in the Probate Court. In view of the fact that ninety days had elapsed between the date of the passage and the effective date of the statute now complained of, during which the mortgagee could have maintained its action in foreclosure, it has slight ground upon which to base complaint of the retroactive effect of the statute. We are of opinion that the judgment of the Court of Appeals was'^n all respects correct, and it is therefore affirmed. ''
 

 Judgment affirmed.
 

 Weygandt, C. J., Day, Zimmerman and Myers, JJ., concur.
 

 Jones and Williams, JJ., dissent.